Naomi MARTIN (now Hunter),
Appellant,

v.

William Venard MARTIN, Respondent.

No. 22142.

Missouri Court of Appeals,
Southern District,
Division One

Nov. 30, 1998.

Donna K. Skouby, Division of Child Support Enforcement, Joplin, for appellant.

No appearance for respondent.

CROW, Judge.

In 1984, the Circuit Court of Jasper County ("the trial court") registered a judgment of a Kansas court awarding Naomi Martin monthly child support from William Venard Martin.

In 1996, Naomi[1] filed in the trial court a "Motion for Revival of Judgment" per Rule 74.09,[2] seeking revival of the judgment registered in 1984.

---

1. For brevity and clarity, this opinion henceforth refers to the litigants by their respective forenames. No disrespect is intended.

2. References to rules are to Missouri Rules of Civil Procedure (1998). The version of Rule 74.09 appearing there took effect January 1, 1988, and remains unchanged.

William filed a written objection to Naomi's motion. William averred that because more than ten years had elapsed between the trial court's registration of the Kansas judgment in 1984 and the filing of Naomi's motion for revival in 1996, revival was barred by Rule 74.09(a), which reads:

"A judgment may be revived by order of the court that entered it pursuant to a motion for revival filed by a judgment creditor within ten years after entry of the judgment or the last prior revival of the judgment."

The trial court, after an evidentiary hearing, entered judgment denying revival.[3]

Naomi appeals, presenting three assignments of error. Discussing them requires a chronological account of the litigation. In compiling it, this court is hindered in that, contrary to Rule 84.04(h), the seven-page statement of facts in Naomi's brief contains not a single page reference to the legal file or transcript. There is precedent from this court that such a brief preserves nothing for appellate review. *Osgood v. Worm World, Inc.*, 959 S.W.2d 139, 140–41[1] (Mo.App. S.D.1998). Nonetheless, this court shall endeavor to exhume enough facts from the fragmentary record to adjudicate Naomi's complaints.

The record handed this court does not contain a copy of the Kansas judgment registered in the trial court in 1984, nor does the record contain a copy of the trial court's docket sheet. Consequently, this court cannot confirm the date the Kansas judgment was filed for registration in the trial court.

However, in its judgment denying Naomi's motion for revival, the trial court recited that it "registered the [Kansas judgment] as a foreign judgment on March 12, 1984." Naomi's brief does not challenge that date.

In registering the Kansas judgment, the trial court found William owed Naomi $7,089 child support.

On a date unrevealed by the record (but sometime during the interval between entry of the Kansas judgment[4] and its registration in the trial court), Naomi married her present husband.

On June 14, 1985, fifteen months after the trial court registered the Kansas judgment, a Kansas court entered a decree of adoption whereby Naomi's present husband became the legal father of the children sired by William—the children for whom the registered Kansas judgment required William to pay Naomi child support.

At the hearing on Naomi's motion for revival, a "child support enforcement investigator and technician"—inferably employed by the Division of Child Support Enforcement ("DCSE") of the Missouri Department of Social Services—testified that William's obligation to pay Naomi monthly child support ended when Naomi's present husband adopted the children. *See: In the Interest of M. R.*, 894 S.W.2d 193, 195–96[3] (Mo.App. E.D.1995). According to the investigator-technician, William owed Naomi $10,839 child support at the time of the adoption.

Asked whether she "made any collections towards that amount" after the adoption, the investigator-technician responded: "According to the court records, there were payments on July 30th of 1986." As this court comprehends the record, $624.59 was received by the trial court that date.[5]

After July 30, 1986, neither Naomi nor DCSE collected anything from William prior to the filing of Naomi's motion for revival.[6] It was filed July 23, 1996.

---

3. The evidentiary hearing occurred November 5, 1996; the judgment denying revival was filed February 2, 1998. The fifteen-month interval between those events is unexplained in the record.

4. This court gleans from Naomi's testimony that the Kansas judgment was entered in 1980.

5. The trial court's judgment denying revival of the registered Kansas judgment included several findings of fact, one of which was: "[N]o pay-

ments were made [on the registered Kansas judgment] except for two wage garnishments totaling $624.50 [sic], both of which were posted by [DCSE] or the Jasper County Circuit Clerk on July 30, 1986. The record does not reflect the exact date when these monies were garnished from [William's] wages."

6. Naomi's brief avers the $624.59 collected in 1986 consisted of $556.09 received in July 1986 and $68.50 received in *August* 1986. A DCSE record received in evidence appears to so indi-

One of the trial court's conclusions of law was that William's obligation to pay Naomi monthly child support ended when Naomi's present husband adopted the children June 14, 1985. That conclusion was consistent with the testimony of the DCSE investigator-technician, mentioned earlier. In support of that conclusion, the trial court relied on *M. R.*, 894 S.W.2d at 195–96[3]. Naomi assigns no error regarding that conclusion.

The trial court also concluded: "[T]he 10–year statute of limitations on any monies due, although continuing, ends as of 10 years after the last payment becomes due." As authority for that conclusion, the trial court cited *Cornett v. Williams*, 908 S.W.2d 872 (Mo. App. W.D.1995).

The "10–year statute of limitations" to which the trial court was referring is evidently § 516.350, RSMo 1994, which reads, in pertinent part:

"1. Every judgment ... of any court of record ... of this or any other state ... except for any judgment ... awarding child support ... which mandates the making of payments over a period of time, shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof ... or in case a payment has been made on such judgment ... and duly entered upon the record thereof, after the expiration of ten years from the last payment so made, and after the expiration of ten years from the date of the original rendition ... or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon ... for any purpose whatever.

2. In any judgment ... awarding child support ... each periodic payment shall be presumed paid and satisfied after the expiration of ten years from the date that periodic payment is due, unless the judgment has been otherwise revived as set out in subsection 1 of this section.... "

The trial court concluded that inasmuch as William's obligation to pay Naomi periodic child support ended June 14, 1985 (the date Naomi's present husband adopted the children), any application by Naomi for revival of her child support judgment against William "[would be] time-barred as of June 15, 1995." As we have seen, Naomi's motion for revival was filed July 23, 1996. Because of that, the trial court held Naomi's motion was not "timely filed."

As this court comprehends Naomi's first claim of error, she maintains the trial court's analysis set forth in the preceding paragraph does not apply in that the judgment was revived by the payments collected from William by garnishment—the payments "posted" July 30, 1986.[7] Naomi emphasizes that her motion for revival—filed July 23, 1996—was filed within ten years after the July 30, 1986, payments.

In support of that hypothesis, Naomi cites *Spangler v. Spangler*, 831 S.W.2d 256 (Mo. App. W.D.1992), a factually intricate case in which the protracted litigation occurred partly in one county and partly in another. Despite that, *Spangler* is helpful by analogy.

In *Spangler*, a 1972 dissolution decree ordered the father to pay the mother periodic child support. *Id.* at 258. The father made a payment through the court in 1980. *Id.* In 1989, the father filed a motion to modify. *Id.* The mother filed a cross motion for an increase in child support and an action for contempt because the father had failed to pay arrearages accrued since 1972. *Id.* at 258–59. When the trial court indicated it would jail the father for contempt, the father paid $750.31 into court. *Id.* at 259. That payment was within ten years after the 1980 payment. *Id.*

After further proceedings which need not be chronicled here, the trial court in *Spangler* found the father owed $28,422.59, and further found collection was not barred un-

---

cate. However, as reported earlier in this opinion, the investigator-technician testified only about "payments on July 30th of 1986." She mentioned no August 1986 payment. It will be recalled from footnote 5, *supra*, that the trial court found payments collected by two wage

garnishments were "posted" July 30, 1986. The trial court's findings mention no August 1986 payment.

7. Footnotes 5 and 6, *supra*.

der § 516.350, RSMo 1986.[8] *Id.* On appeal by the father, the court held:

"[The father] claims the payments due from 1972 through 1980 are presumed paid and collection is barred by § 516.350.... In order to revive a judgment for periodic child support under the statute a payment must have been made 'on the record thereof' within a ten year period. *Ivie v. Missouri Dept. of Social Services,* 793 S.W.2d 212, 215 (Mo.App.1990). Any payment made will revive the judgment for the amount of arrearage due for the ten years prior to the payment being made. *Id.*
....
The payment made by [the father] in 1980 effectively revived the judgment entered in ... 1972, pursuant to § 516.350, and all arrearage remain due as determined by the trial court.... [T]he court's ruling that [the father] owes $28,422.59 is hereby affirmed[.]"

*Spangler,* 831 S.W.2d at 259[2] and 260.

▪ In the instant case, as recounted earlier, the two payments collected from William by garnishment were "posted" July 30, 1986.[9] If that constituted payment "duly entered upon the record" within the meaning of § 516.350.1, RSMo 1994 (quoted in pertinent part earlier in this opinion), those payments revived the registered Kansas judgment as of July 30, 1986, hence Naomi's motion for revival, filed July 23, 1996, was timely under Rule 74.09(a) (quoted earlier), as Naomi's motion was filed within ten years after the July 30, 1986, revival.

Accordingly, the outcome of this appeal hinges on whether the July 30, 1986, payments were "duly entered upon the record" of the registered Kansas judgment in the trial court.

In *State ex rel. Clatt v. Erickson,* 859 S.W.2d 239 (Mo.App. E.D.1993), the appellate court had to decide whether a child support payment was "duly entered upon the record" of the trial court within the meaning of § 516.350. *Id.* at 242. The evidence regarding payments included, *inter alia,* an "arrearage affidavit" prepared as part of DCSE's investigation, and testimony by the clerk of the trial court. *Id.* at 241 and 242. The appellate court explained:

"In reference to court proceedings, the term 'record' is 'a written memorial of all the acts and proceedings in an action or suit, in a court of record.' Recognizing that the recordation of child support payments is an ongoing process which occurs post-judgment, the term 'record' would include 'any recordation by the clerk of the court for payments made on the judgment.' This interpretation is supported by § 452.345.3 (Supp.1992) which outlines the duty of the clerk of the court to keep records of child support payments."

*Id.* at 242[5] (citations omitted).

Regarding the "arrearage affidavit," the opinion said:

"This affidavit was not recorded with the clerk of the court and did not become a part of the record. The trial court ... erred in considering this affidavit for purposes of revival under § 516.350."

*Id.* at [6].

However, as to the court clerk's testimony, the opinion held:

"The record ... includes testimony by the Circuit Clerk indicating that a payment for $63.75, dated May 7, 1991, is present on the court records. Since the determination of whether a payment is made on the record does not involve the exercise of discretion but only involves the application of law to the facts, the court may weigh the evidence and determine the facts accordingly. This court finds that a payment on the judgment was duly entered on the record of the court on May 7, 1991. Any payment made will revive the judgment for the amount of the arrearage due for the ten years prior to the payment being made. Pursuant to § 516.350, the judgment for child support is effectively revived from the date of May 7, 1981[.]"

*Id.* at [7–9] (footnote and citations omitted).

▪ In the instant case, as reported earlier in this opinion, the DCSE investigator-

---

8. Section 516.350, RSMo 1986, was carried forward unchanged as § 516.350, RSMo 1994, quoted in pertinent part earlier in this opinion.

9. Footnotes 5 and 6, *supra.*

technician testified that "[a]ccording to the court records," child support payments were collected from William on July 30, 1986. While that testimony may have been susceptible to objection, none was registered. Relevant evidence received without objection may properly be considered, although it would have been excluded on proper objection. *Appelhans v. Goldman,* 349 S.W.2d 204, 207[5] (Mo.1961). Its probative worth and effect are for the trier of fact. *Strutton v. Huntington,* 847 S.W.2d 138, 141 (Mo.App. S.D.1993); *In re J.L. L.,* 402 S.W.2d 629, 633–34[1] (Mo.App.1966).

The trial court evidently found the testimony of the investigator-technician persuasive, as the trial court concluded that the July 30, 1986, payments were "posted" by DCSE "or the Jasper County Circuit Clerk on July 30, 1986." [10]

Consistent with *Clatt,* this court holds the child support payments collected by garnishment from William and "posted" on July 30, 1986, were "duly entered upon the record" of the registered Kansas judgment in the trial court within the meaning of § 516.350.1.

■ It follows that Naomi's first point is meritorious. This court holds the trial court erred in concluding that Naomi's motion for revival was untimely filed. The trial court, in reaching that conclusion, appears to have reasoned that *Spangler,* 831 S.W.2d 256, was inapplicable in the instant case in that the father in *Spangler* paid the $750.31 "voluntarily," whereas in the instant case William "had his wages garnished, so his payment was not voluntarily [sic]."

This court finds that difference inconsequential. As Naomi aptly observes: "To find that payments must be voluntary in order to be considered a payment on the record pursuant to statute would likely preclude any child support payments whatsoever by those wishing to escape their obligation. They would simply wait out their time, making no payments, thereby escaping any liability on the judgment, as money taken from them involuntarily would not count as a payment, according to the trial court's reasoning."

■ The trial court also appears to have reasoned that because the payments "posted" July 30, 1986, may have resulted from garnishments imposed before July 23, 1986, the ten-year limitation in Rule 74.09(a) expired before Naomi filed her motion for revival on July 23, 1996. This court draws that inference from the following passage in the trial court's conclusions of law:

> "[T]he 10–year period contemplated by statute and by Civil Rule 74.09 began to run from the date of the garnishment of [William's] wages, and not as of the date the monies were posted on the record. This results in [Naomi's] Motion not to have been timely filed."

Naomi's second point assails the above-quoted conclusion. Naomi asserts: "[Section 516.350.1] is clear that the relevant period is ten years from the date of last payment and ... Civil Rule 74.09 does not require that the date from which a revival be granted be within ten years of the date monies are withheld from someone's wages."

This court agrees. Rule 74.09(a) requires, *inter alia,* that a motion for revival be filed within ten years after "the last prior revival of the judgment." Section 516.350.1 provides, *inter alia,* that a judgment is revived if a payment thereon is made and duly entered upon the record thereof. It is "the date of the last payment," not the date of a garnishment producing the payment, that governs when revival occurs. Naomi's second point, like her first, is meritorious.

Naomi's final point reads:

> "That the trial court erred in ordering costs to be paid by the State of Missouri in that the State of Missouri is not obligated to pay costs in these actions pursuant to statute and case law."

Naomi's averment that the trial court taxed costs against the "State of Missouri" requires the following explanation.

The title of this action, as shown on Naomi's motion for revival, lists Naomi as "Plaintiff" and William as "Defendant." The title then shows: "State of Missouri, Division of Child Support Enforcement, Intervenor."

10.  Footnote 5, *supra.*

The record furnished this court does not reveal how or when DCSE became an intervenor. Furthermore, it appears DCSE was not seeking to collect the child support arrearage from William for itself, but instead was endeavoring to aid Naomi in collecting it. This court draws that inference from the following testimony of the DCSE investigator-technician:

"Q. ... [T]he state of Kansas has not asked us to seek reimbursement for AFDC benefits on their behalf; have they?

A. No, they have not.

Q. We are just operating to try and have the money—the arrearages back for Naomi Hunter; isn't that correct?

A. That's correct."

Beneath the signature of the lawyer who filed the motion for revival on Naomi's behalf, we find this: "Child Support Enforcement Division." It thus appears that DCSE provided the lawyer who represented Naomi in this proceeding.

The trial court's judgment ends by stating: "Costs of this action shall be taxed against Intervenor."

The notice of appeal identifies Naomi, alone, as the appellant. Naomi, of course, is not aggrieved by the trial court's assessment of costs against DCSE. It is thus questionable whether Naomi, in this appeal, can assign error regarding that ruling. *See: Moore v. City of Pacific,* 534 S.W.2d 486, 493–94 (Mo. App.1976). However, this court need not grapple with that issue in disposing of this appeal.

For the reasons set forth earlier in this opinion, this court holds the judgment must be reversed and this cause must be remanded to the trial court with a directive to enter judgment reviving the registered Kansas judgment in favor of Naomi.[11] Rule 77.01 provides that in civil actions, the party prevailing shall recover his costs against the other party "unless otherwise provided in these rules or by law." Inasmuch as the judgment to be entered on remand will be in favor of Naomi and against William, the trial court is directed to assess costs against William.

The trial court's judgment denying revival of the registered Kansas judgment is reversed and the cause is remanded to the trial court for entry of judgment consistent with this opinion.

PREWITT, P.J., and PARRISH, J., concur.

---

11. The trial court found William owed Naomi $10,214.41 as of the date of the hearing, November 5, 1996. Naomi does not attack that finding.